Thank you, Your Honor. The arbitration agreement at issue in this appeal requires all disputes to be brought in individual arbitration. As the Supreme Court has held repeatedly, parties may not be compelled to arbitrate in any manner other than traditional individual arbitration, absent express contractual authorization. And in EPIC systems, the Supreme Court warned lower courts to be alert to new devices and formulas that would undermine the individualized form of arbitration envisioned by the FAA. This appeal involves precisely such a device. From the moment petitioners aggregated and filed over 5,000 arbitration demands with AAA, when they filed a single lawsuit on behalf of 5,000 claimants, they have I'm getting a lot of, okay. The individual claimants here, they didn't do anything other than file their own individual arbitration demands. What your complaint is about is the conduct of their counsel, but counsel's not a party to this arbitration agreement. You have an agreement with these individual drivers, and they didn't do anything wrong from my vantage point. They actually did, Your Honor. They linked their claims together, and really from the outset of the demand, the original demand that was filed with AAA, this has been proceeding in an MDL-like manner. It has not been individual arbitration, and it's really the petitioners' claims themselves that have been aggregated, consolidated, and coordinated in this manner. And I would like to- That's the party's fault. I mean, I know you have this boilerplate allegation that they all filed sort of the same statements, but isn't that an issue that would be up to the arbitrator to decide whether the individual claims were properly fled? Your Honor, we have attempted to get individual determinations of that issue, but instead, we have gotten aggregate across-the-board rulings on critical threshold arbitrability questions before the AAA. They have aggregated these, so it's not just about what the petitioners did, and I do think it is about their actions as well as their counsel, but it's also about AAA's actions. And I think here, there are critical determinations and actions by AAA that managed this and adjudicated these threshold disputes in an aggregated MDL-like manner. I'm sorry if AAA rules were violated here. Sorry, we're getting a lot of feedback somehow, but it seems like if your complaint is against AAA, we would need to understand how AAA violated its contract with you or something, and I don't think that's the way you've argued this case. No, this is about the party's class action waiver. It requires all claims to be brought in individual arbitration, and what we are confronted with here is something very different from individual arbitration. It's really a distortion of that, and the cases have been aggregated by AAA in a way that violates the party's arbitration agreement, and it's just like if AAA had proceeded with a class arbitration, AAA hasn't. But why haven't you sued AAA on a contract action? Why don't you have, also? Your Honor, AAA has rules that provide for things like class arbitration, but just because their rules provide them doesn't mean parties should be subjected to that, and that's what the Supreme Court has said over and over again. So here, what we're dealing with is AAA's attempt to force the parties to arbitrate in a way that violates our agreement, and we have said at every step of the Instead, AAA proceeded in an aggregate way. It opened up a single case. It assigned a single arbitrator. It captioned the case as individuals versus postmates. It began making blanket determinations. case basis, but they were done in one fell swoop in a way that violates our agreement, and when the parties could not—we attempted so many times to find a solution to this, and we proposed many different alternatives, but petitioners actually rushed into court and filed a lawsuit on behalf of all 5,000. So those individuals participated in this lawsuit that brought us here to this court, and they did so in a way, once again, that was in the aggregate, and we were trying to find a solution, but we do not believe we should be compelled to arbitrate in this way. Counsel, the point that you've just made seems to highlight what, for me, is one of the problems here, and that is that it seems like what you're really complaining about is the way that AAA and the plaintiffs, I suppose, have interpreted and applied the arbitration clause, but the arbitration clause says that disputes over the interpretation and applicability of the arbitration clause have to be resolved by the arbitrator. Why isn't everything that you've just said something that you should present to the arbitrator and not to Your Honor, that goes to the heart of the second issue in this appeal, which is the delegation clause. The parties did not clearly and unmistakably delegate this dispute to the arbitrator. As we've explained, and the standard is clear and unmistakable delegation, no issue, no threshold issue like this one is delegated unless it's clear and unmistakable. In here, the parties agreement clearly says that any dispute relating to or arising out of the class action waiver is for the court to decide, and the class action waiver is where it requires individual arbitration. But it also, I mean, that's the part that you just read is not a 10B4. What we find there is much narrower related to unenforceability or voidness of the class action waiver, and the next sentence there says all other disputes relating to interpretation are to be resolved by the arbitrator. So why don't those provisions resolve this against you? Well, Your Honor, that interpretation would really read out of the relating to or arising out of the class action waiver, and we have to read the agreement in a way that harmonizes all of the provisions. There is a section 10B4 that Your Honor points to that calls out more specific disputes, which are the type that usually have arisen, and it makes sense that parties would call those out as specific examples that they're particularly concerned about because challenges to the enforceability of class waivers have been very common. But here, that would completely read out of the agreement the very broad language about any dispute relating to or arising out of the class action waiver, and that is not clear and unmistakable, and I guess that's where it's really... I'm sorry to interrupt, but ordinarily, the canon against superfluity, I think, would be a strong argument for you, except for the fact that it says, you know, as stated in 10B4, which isn't the most natural reading of that clause that we shouldn't read the rest of the sentence as having independent force, but it's simply a cross-reference to 10B4, and if we want to know what is the substantive scope of this provision, we have to look at 10B4. I don't believe so, Your Honor, because it does not say only as stated in section B4 below. The two provisions really should be read together and harmonized, and we think that the better interpretation is that the language in B4 was simply calling out examples of the very broad language in A2, but going back to... What's the point of the as stated clause, then? Is there any effect of the as stated clause? It's pointing out, Judge Friedland, that in section B4, there are examples that are called out specifically, and we think that it's certainly not clear and unmistakable that the parties intended a dispute relating to the class action waiver to be decided by an arbitrator, and it has to be clear and unmistakable. Help me understand why you think you're entitled to the clear and unmistakable standard from first options, because it strikes me as we actually have the other presumption, which is once parties have agreed to arbitrate, we err on the side of assuming that other disputes are swept up within that agreement. Why do you think you get the first options, the benefit of first options? Yes, we do, Your Honor, because this is a The Supreme Court has said over and over again that this has to be clear and unmistakable, and I think that what we're dealing with here shows exactly why courts are needed, because this is a new device that really contradicts not only the party's agreement, but the purpose of the FAA and the traditional arbitration that was envisioned, and I would just once again point the court to there are many places in the record, but I think the clearest example, if the court is looking for what AAA did here that is not individualized, page 397 of the excerpts of record is a letter from AAA captioning this once again collectively and making all of these threshold determinations in a collective basis, and it's the joinder of these claims in this way, and insisting that they proceed lockstep, and that if one can't go forward unless they all do, and making these across-the-board determinations. We never got our hearing before AAA on many individualized issues here, and so that's why this ended up in court, and we believe it's for the court to decide. Well, I don't know. I'm completely unsympathetic to your argument on the merits, to be honest, because your main complaint really is with AAA, and you chose them. If you have some issue with them, as Judge Friedland said, take it up with them. This is not, you don't have any complaint against the conduct of the individual drivers here. They've done what your agreement with them required them to do, and if you don't like the way AAA has handled this new tactic, as you put it, then maybe you need to switch arbitration providers, or maybe you need to draft a new agreement, but your issue is not with the individual drivers. It's with AAA. Your Honor, we think that the way AAA has proceeded with this violates our agreement, and it's the same if AAA had insisted on proceeding with a class arbitration. I think we would all at that point that that would, we might have picked AAA, but they couldn't do that. They can't proceed on a class basis. We think that this is a, it is admittedly a new device. It is a new tactic, but it is treating arbitrations like an MDL, and we know from everything from CAFA to other provisions in the law that MDLs and mass actions are a different animal, so we're dealing with that here, and we think that that does violate the party's agreement, and that AAA shouldn't be allowed to proceed in this way because it makes it more costly. It makes it more procedurally complex, and I'm just going through the factors in Concepcion, which I think inform this analysis, and the rationale applies here equally. It also creates the coercive settlement pressure, and they have done that. Petitioners have done that from the outset, and AAA pushed us to mediate collectively before a single mediator. They pushed us to do that and to force the parties into a somewhat class-like settlement, and so once again, it is that aggregation that is the problem, and we think that it is not clear and unmistakable that this is up to AAA to decide, and I would like to reserve some of my time for rebuttal. Thank you. Very good. Let's hear from you. Good morning. May it please the Court. I can't help but note the remarkable bait-and-switch that Postmates is attempting in this case. When Postmates repeatedly enforced its arbitration agreement to bar class actions, it was all too happy to enforce the rule, the well-established rule, that agreements to arbitrate must be enforced according to their terms, and that individual arbitration being burdensome or inefficient were no basis to override the arbitration agreement. That position left tens of thousands of couriers working for Postmates with only two choices. They could drop their claims entirely, or they could file their demands individually with AAA. Our clients picked door number two. Every single one of them filed an AAA's filing fee requirements. AAA determined that they had properly invoked the procedures for an individual arbitration, and now Postmates is twisting itself in knots to try to avoid both the clear delegation clause in its contract and to argue that the very process required by its agreement is now prohibited by its agreement. But at the end of the day, this is just a case about contract interpretation, and the contract here is clear. So if I could start with the Can I just beg to differ with you when you say that it's clear? I mean, it's sloppily drafted, and I'm sure it was a drafting error on Postmates' part that they didn't also amend the second provision, and that's what gives rise to at least the potential ambiguity here. Let's assume that we thought, or I'll just tell you, I think that this is somewhat ambiguous. Can you tell me why your opponent is incorrect in invoking the clear and unmistakable standard from First Options? Yes, thank you, Judge Watford. My counterpart is correct that the court in First Options drew a distinction between what it called the who decides question and the what is decided question, and the court there, which involved a case with no delegation clause at all, said where parties have already addressed what gets arbitrated, we're going to assume that they wanted everything to go. When they haven't addressed at all the question of who decides, that's an arcane subject. They use the word arcane, and they said a party often may not focus upon the question or upon the significance of having arbitrators decide the scope of their own powers. So for that reason, the court was, quote, it hesitated to interpret silence or ambiguity on delegation of arbitrability issues as giving the arbitrators that power. So that's what we have here is the precise opposite fact pattern from the one that motivated the court. Here, the parties have addressed in intricate detail, maybe not perfectly in your honor's view, but they have clearly thought a lot about the contract, thinks a lot about it then reaffirms that but for the carve out, everything must go to the arbitrator. If the question is how do we decide what the party's intent is there as manifested by the words of the contract, I would submit that the best way to get at that intent is to just properly interpret the words of the contract and not put a thumb on the scale in any one direction. I won't belabor the delegation issue as to whether it's clear. I will just highlight one point that we noted in our did not address in reply, which is that our reading of the clause is that there's a sign posting clause, but the later clause is more specific and governs. That structure is also apparent in the overall structure of the contract. On the very first page of Postmates Arbitration Agreement, in all caps, it says, as noted below, this agreement requires the parties to resolve arbitration on an individual basis to the fullest extent permitted by law. If Postmates position is that that structure, as noted below, here's a statement, is an independent command that's not limited by the later provisions, then that clause alone requires delegation because parties are perfectly allowed to delegate all questions of arbitrability with no exceptions to arbitrators. Now, we think, as we said in our briefs, that that is just a road mapping sentence. I won't pretend otherwise, but I think it's the exact parallel structure. So I think that's a compelling reason that it's, in fact, clear and unmistakable. To turn to the class arbitration argument, I think there's three fundamental problems. But just let me stop you there because I want to be all of everything that you're about to tell us about. You don't think we should be meddling in at all. We should just say, you know what, the parties agreed to ship all of this to AAA and let them sort it out? That's correct. Okay. And I think that this court would have discretion, if it's affirming, to also address what is a very important question about whether filing thousands of individual demands makes it a class. No, that's why I jumped in, because I don't think we could. I think all, as I understand your argument, all you want is potential conflict between these two provisions. If we agreed with you that it was clear that the parties intended for the arbitrators to resolve whether your client's conduct violated the class action waiver, that's all we would say. We would just say, it's not for us to decide, AAA, you're going to have to sort this out, and the parties, you know, best of luck to you. And we would say nothing further. Am I correct in that? Well, certainly we're happy with that. And I think the key point is that AAA is under the rules adopted by Postmates, which I can speak to, it is the entity to decide that. I was just noting, and I won't fight too hard on it, I'm fully happy with what you just described. But I think because we are seeking affirmance of the district court's decision, and the party seeking reversal is asking you to reach it, you could opine on that question as a matter of discretion, the case I'd cite... How? Just explain to me how that would work. We would say that the parties agreed to send this dispute to an arbitrator to decide, but we're going to offer an advisory opinion just to enlighten the arbitrators, and here's our take on how this be resolved on the merits. Is that what you're asking us to do? I would... Well, again, I'm not asking too hard. I think I'm just noting this possibility. But what I would frame it as is there's two alternative grounds for affirmance. I agree with you, Your Honor, that the sort of logically, intuitively antecedent one to get to first is delegation, which is why I'm not fighting that. But I think in your discretion, you could address either of the grounds for affirmance or both. And the cite I would give for reaching a question like that after a threshold issue is Planned Parenthood of Greater Washington, which is in the briefs. It's not... It's an agency law case, so I won't say it's... Is there another ground that's more like the parties have come to us talking about a class action waiver, but what they're looking at are individual cases. We don't understand why they're asking us to this seems to be a series of individual cases. And clearly, the individual cases get resolved by AAA. Is that what your alternative ground is that would allow us to not reach this contract interpretation issue? I mean, it's clear that if it's just an individual arbitration, it definitely goes to AAA to do whatever it wants, right? So if we just... Is that what you're asking us as the alternative? We just say this is a bunch of individual arbitrations, so clearly they go to Postmates has framed its argument to know it's moved a bit, and so I don't want to dodge the question. I think... And they can speak to their argument. I think that they're at least making the argument that what your honor just described is incorrect. I think what you just described is correct. So I think you could describe it that way as part of answering the question. I will note that it is very significant what AAA's role is here because, as the case we said in the briefs, banned of Padawatami Indians or C&L Enterprises. The AAA rules are not just, as the Supreme Court said in that case, interpretive guides. When they're incorporated by the party's agreement, they are treated as terms of the agreement. And the AAA rules say several things. Rule 2 says that when parties agree to AAA rules, they agree that AAA shall administer the arbitration. Rule 8 says that before an arbitrator is appointed, AAA interprets the rules just as they did here as to threshold issues that are needed. There's inevitably... Certain things have to happen before the arbitrator gets appointed. Like when one picks a private dispute resolution mechanism, there are fees that need to be paid. It is not free like if one goes to the court. So that has to happen first, and AAA has to do it. Postmates refer to AAA as the docketing clerk. And I think that's in some ways okay. They make sure the requirements are met for filing. Once they do, the parties can take it up with the arbitrator. Postmates signed up for that process. And I want to be very clear. Postmates has focused entirely, as Judge Friedland noted, on the administrative steps AAA has taken in order to initiate arbitrations. We don't believe the contract says anything about how AAA has to take those steps. It talks about how the individual arbitrations will be conducted. And in the 50 cases that Postmates has been to pay for their fees, those are proceeding fully individually. Individual strike lists have been submitted. When parties don't pick an arbitrator through the strike list process, AAA appoints an individual arbitrator. Individual preliminary hearings are held. Individual discovery. Individual briefs. That is all going individually. The only question is whether AAA needs to send 5,000 emails or can send one email because the counsel are the same for the parties. Postmates' arguments throughout the briefs are a bit at war with each other because on the one hand, Postmates complains that the filing of so many demands creates a lot of administrative work and slows things down. But on the other hand, they seem to be suggesting that under their contract, there's a fundamental distinction between Postmates sending 5,000 emails to the same counsel that say the same thing about the same fees that are owed or just saying that in one email. I don't think that's anywhere in the contract. Let me stop you, Mr. President. Judge Miller, were you trying to jump in? Yeah. Thank you, Judge Watford. I'm just going to ask you to go back for a moment to the question of whether there really are alternative grounds for affirmance here. I'm not familiar with the Planned Parenthood case you cited, but in the arbitration context, doesn't Henry Schein say that even if we think the merits question or the question that has been left to the arbitrator is a really easy question, if it's left to the arbitrator, we can't decide the merits of it as an alternative ground. We have to leave it to the arbitrator. Yeah, I think it does say that. I think that case and the case where one would normally think that a court can't reach the question is where the court would be reaching it in order to stop the parties from going to arbitration. I think, as I noted, it's different where the question is there's multiple grounds to affirm and send it to the arbitrator. It's always dangerous to get into but I don't know that this is a jurisdictional question in the true sense. It is a question of contract interpretation and there's multiple parts of the contract one could look to to say that the parties have to go to arbitration. So again, I think it's obviously your honors can all decide which issues you want to address. So I think as to the arbitration, I think I won't belabor the point. I'm sorry, your honor, I lost you for a minute there. Yes, I just got a message from Zoom that my internet connection is unstable. Oh no, that's a bad sign. Are you able to hear me now? I am, thank you. I'm sorry, I just wanted to follow up on Judge Miller's question because I'm just trying to get clarity on what it is you want us to do. I kind of, reading between the lines, get the sense that you actually want us to decide this question because this keeps arising in other jurisdictions and you'd like to have a definitive appellate decision as to whether this tactic, if you want to use that word, is or is not okay. Am I wrong in that or do you really just want us to send you back to AAA to let them sort it out? No, your honor, you're not wrong. We want the appellees to be able to go to this case, want to go arbitrate, and we're confident AAA will initiate individual arbitrations beyond dispute. So what you described is just answering the threshold question, completely happy with that full stop. The broader interest flows from the fact that yes, this is an important question, a broader impact, and it's frankly frustrating that when left with no option other than filing individual demands for arbitration, our clients are then criticized for pursuing remedies in the only manner possible. But you are correct in your assessment, your honor. So we would ask that the district court's judgment be affirmed. Okay, do either of my colleagues have any further questions of Mr. Postman? No. Okay, great. Let's put two minutes on the clock. Thank you, your honor. And I just want to address that point. First of all, there is an opt-out in this agreement. It was not a mandatory agreement. So all of the petitioners have the ability to opt out. Many couriers have opted out of this agreement. It's a very fair opt-out. And the second point is there are many arbitrations going forward, over 100 right now before AAA, but those have gone forward individually and not in an aggregate manner. And it is the claimants here, the petitioners, who have chosen to go about things in this way. And we do attribute to parties the actions of their counsel. So, you know, I think that applies here as well. And this is what's caused the backlog and the problems with AAA. And it is not up to AAA to decide that it can proceed in an aggregate manner when a party's agreement says that only individual arbitration is allowed. Under Section 4 of the FAA, parties may not be forced to arbitrate in a manner that violates their agreement. We know that this is an issue for courts to decide presumptively. We know that from the Shivkov case. And here, the district court agreed that the clear and unmistakable standard applies. Parties all agreed that. So I don't think the language is clear and unmistakable that this is for the arbitrators to decide. But AAA cannot go forward with this in an aggregate manner. This is not just about, you know, a simple clerical matter. This is about whether an arbitration agreement exists between all 5,000 individuals. We know that nearly a thousand couriers either never signed up to use the platform, never entered into an arbitration agreement. They released claims in other settlements. We know that there are serious threshold problems. We have never had our ability to be heard on any of that because of this MDL style tactic. So we would ask the court to reverse the district court's decision. And we do very much want to go forward in an individual manner. And at every turn, we've made that clear to AAA, to petitioners, and I hope to this court today that that is really what we're looking for here. And we thank you very much. Thank you. Thank you very much, counsel. The case just argued is submitted.
judges: Watford, Friedland, Miller